*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re KAZMIERCZAK, Minor.

UNPUBLISHED
August 22, 2024

No. 369083
Lapeer Circuit Court
Family Division
LC No. 22-012983-NA

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his minor child, KAK, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (parent fails to provide proper care or custody), (i) (parental rights to one or more siblings terminated), and (j) (reasonable likelihood child will be harmed if returned to parent). On appeal, respondent argues that the trial court clearly erred by finding that the statutory grounds for termination were established by clear and convincing evidence and by finding by a preponderance of the evidence that termination of his parental rights was in KAK's best interests. Embedded in these arguments are respondent's claims that reasonable efforts at reunification were not made, especially given his cognitive limitations, and that a guardianship should have been established instead of termination. We affirm.

In April 2022, Children's Protective Services (CPS) received a referral alleging that three-year-old KAK had been physically abused as evidenced by numerous bruises on her face and body. A medical examination strongly suggested that KAK was beaten. Accordingly, the Department of Health and Human Services (DHHS) filed a petition requesting the trial court to authorize the petition and issue an order removing KAK from the family home. Subsequently, KAK was removed from the home and placed with respondent's aunt, JW. At the adjudication in September 2022, respondent pleaded no contest to the allegations in the petition, and the trial court took jurisdiction over KAK.[1] Reunification was the initial goal, and under the parent-agency treatment

---

[1] It appears that KAK was beaten and abused by respondent's live-in girlfriend at the time and that respondent, who gave DHHS explanations of an accidental nature for the bruising, was faulted for

plan, respondent was obligated to undergo a psychological evaluation, attend and benefit from individual counseling and parenting education and skills classes, maintain stable and suitable housing, and obtain and keep employment so as to produce a legal source of income.

Respondent made progress and was eventually permitted to have unsupervised parenting time with KAK. But in September 2023, parenting time was suspended after DHHS visits to respondent's home revealed numerous troubling signs, and respondent had tested positive for cocaine use. The trial court was presented with evidence that individuals staying at respondent's home were using cocaine and methamphetamine on the premises, that items and residue suggesting drug use and activities were located in respondent's home, that garbage was strewn throughout the yard, and that animal feces and urine were found on the porch and inside the house. Additionally, there was evidence that broken glass was left on a floor, that the house did not pass a city inspection, that defendant was incoherent with bloodshot eyes during one DHHS visit, that dangerous and aggressive dogs were kept on the property, that women's underwear and an ashtray were found in KAK's bed, that fights and assaults were occurring on the premises, and that the police had visited the home approximately 50 times to quell a variety of disturbances.

Accordingly, the DHHS filed a supplemental petition to terminate respondent's parental rights, and the trial court ultimately found that grounds for termination were established under 712A.19b(3)(c)(*i*), (g), (i), and (j). The trial court also determined that reasonable efforts toward reunification had been made by the DHHS, that a guardianship was not advisable, and that termination of respondent's parental rights was in KAK's best interests. This appeal ensued.

In *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020), this Court set forth the following framework with respect to termination appeals:

> If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests. A finding is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed. When applying the clear error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. [Quotation marks, citations, brackets, and ellipses omitted.]

Assuming that reliance on MCL 712A.19b(3)(c)(*i*) for termination of respondent's parental rights was problematic because there was no evidence that KAK was physically abused or that respondent failed to protect KAK from physical abuse after adjudication, we conclude that the trial

---

failing to protect KAK. KAK's mother released her parental rights to the child and is not a party to this appeal. Respondent's parental rights to three other children were previously terminated for noncompliance with his case-service plan. A fourth child was adopted after respondent voluntarily released his parental rights.

court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(j). Subsection 19b(3)(j) provides for termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."

The tumultuous, unsanitary, criminal, drug-filled, and dangerous home environment in which respondent was living and KAK would visit as shown by the evidence alluded to earlier clearly constituted strong evidence of a reasonable likelihood, based on respondent's conduct and capacity, that KAK would be harmed if returned to respondent's home. Respondent also failed to substantially comply with and benefit from his case-service plan, consistently failed to follow through on keeping appointments, and failed to take his medications regularly. See *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014) ("a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home"). Respondent's conduct, his abysmal choices of persons whom he allowed to stay in his home, and his lack of capacity to protect KAK compelled termination of his parental rights. To say the least, his housing was unstable and unsuitable for KAK. Respondent contends that this is merely a case in which questionable people took advantage of his hospitality. But that is exactly the problem, i.e., respondent's susceptibility to others taking advantage of him, which in turn placed KAK in harm's way. We conclude that the trial court did not clearly err by finding that there existed clear and convincing evidence supporting termination of respondent's parental rights under MCL 712A.19b(3)(j). Because only one ground for termination needed to be established to terminate respondent's parental rights, we need not address the other grounds. *Mota*, 334 Mich App at 320.

Next, respondent contends that the DHHS has an obligation under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., to make reasonable accommodations for disabled parents so as to best ensure that they receive and benefit from services offered by the DHHS. In cursory fashion, respondent contends that the DHHS failed to accommodate his disabilities, i.e., his cognitive limitations, low IQ, and mental-health problems, leaving him "largely on his own," and that therefore *reasonable* efforts at reunification were not made. "We review the trial court's findings regarding reasonable efforts for clear error." *In re Smith*, 324 Mich App 28, 43; 919 NW2d 427 (2018). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

The DHHS normally has an affirmative duty to make reasonable efforts at reunification before seeking the termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017); see also MCL 712A.18f(3)(b); MCL 712A.19a(2). To that end, the DHHS in this case created a case-service plan that included a schedule of services to be provided to respondent. See *In re Hicks/Brown*, 500 Mich at 85-86. When providing services, the DHHS must give a respondent a reasonable time to make changes and benefit from the plan. *In re Mason*, 486 Mich 142, 159; 782 NW2d 747 (2010). "Not only must respondent cooperate and participate in the services, she must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). The ADA does not provide a defense to proceedings to terminate parental rights, *In re Terry*, 240 Mich App 14, 24-25; 610 NW2d 563 (2000), but it does require the DHHS to reasonably accommodate a disabled parent when providing services to achieve reunification and avoid termination of parental rights, *In re Hicks/Brown*, 500 Mich at 86, citing 42 USC 12132 and 28

CFR 35.130(b)(7). The DHHS's obligations under the ADA dovetail with its affirmative duty under Michigan's Probate Code "to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich at 85-86, citing MCL 712A.18f(3)(b) and (c) and MCL 712A.19a(2). The parent bears the burden to show that he or she would have fared better with an accommodation. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005).[2]

A claim that a parent's rights under the ADA were violated must be raised well before the dispositional hearing to terminate parental rights. That did not occur here, and the failure to do so constitutes a waiver. *In re Sanborn*, 337 Mich App 252, 263 n 3; 976 NW2d 44 (2021).[3] Nevertheless, we will address the issue. The record indicates that respondent needed assistance with making daily living and parenting decisions because of his cognitive deficits and low IQ. The DHHS provided respondent with a parent partner for purposes of one-on-one parenting education, but respondent ended the relationship because he felt the services were no longer needed. Respondent also informed the DHHS that he did not feel that his parent partner was helpful. The DHHS additionally offered respondent help with budgeting, and respondent declined. And on multiple occasions the DHHS attempted to assist him in obtaining housing and a legal income. The trial court considered not only respondent's need for help but also his refusal to accept it. Respondent did not meet his obligation to cooperate with and participate in offered services, and the DHHS's efforts to accommodate respondent's stated "disability" were reasonable. Moreover, respondent does not identify what services should have been provided to him. In sum, we conclude that the trial court did not clearly err by finding that reasonable efforts at reunification were made.

With respect to the issue concerning whether termination of respondent's parental rights was in KAK's best interests, in *In re Mota*, 334 Mich App at 321, this Court discussed the best-interests analysis, stating as follows:

> With respect to a child's best interests, we focus on the child rather than the parent. In assessing a child's best interests, a trial court may consider such factors as a child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could

---

[2] Failure to make reasonable efforts toward reunification may prevent the DHHS from establishing statutory grounds for termination. *In re Newman*, 189 Mich App 61, 65-68; 472 NW2d 38 (1991).

[3] During his testimony at the termination hearing, respondent did complain that he was inadequately assisted by the DHHS with respect to helping him understand and walking him through the proceedings.

be returned to the parents' home within the foreseeable future, if at all. [Quotation marks, citations, and brackets omitted.]

The evidence reflected that although respondent loves KAK, they appeared to have a bond, and KAK looked forward to parenting time, respondent did not demonstrate an interest or ability to act as a parent for KAK. By the time of the termination hearing, for instance, respondent had ceased involvement in KAK's schooling or medical care and had stopped asking JW about her, and he required encouragement to do more than sit and watch television with her during their parenting-time visits. Despite the love and bond between the two, respondent was unable to provide stability, safety, and permanency. Moreover, KAK had been out of respondent's care for the majority of her young life. Respondent, however, failed to adequately address his issues during the lengthy proceedings and was unable to effectively parent KAK despite being offered extensive services. At the time of termination, respondent's home clearly remained unsafe. KAK was in relative placement with JW, which the trial court properly considered as part of the best-interests analysis.[4] KAK was doing well in her placement with JW, and she was bonded with her aunt, who was committed to caring for KAK's needs and expressed a willingness to adopt her. KAK considered JW to be her mother and looked to her for love, guidance, care, and comfort.

On the guardianship issue, a guardianship may be appropriate when "an ongoing relationship with [the parent]—rather than termination—is in the children's best interests." *In re Mason*, 486 Mich at 169. "[W]hile the guardian assumes the legal duties of a parent . . . , the parent is still under many circumstances permitted to maintain a relationship with the child." *In re TK*, 306 Mich App at 705. In this case, the trial court took the lead in having the DHHS look into the possibility of a guardianship with JW, but the court ultimately found that the continuing risk of harm respondent posed to KAK rendered a guardianship inappropriate. We find no error in that ruling. In sum, we hold that the trial court did not clearly err by finding by a preponderance of the evidence that termination of respondent's parental rights was in KAK's best interests.

We affirm.

/s/ Jane E. Markey
/s/ Brock A. Swartzle
/s/ Philip P. Mariani

---

[4] "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted).